**R**obert **W**isniewski **P.C.**
ATTORNEYS-AT-LAW
**225 Broadway, Suite 612**
**New York, New York 10007**
------
**TEL: (212) 267-2101**
**FAX: (212) 587-8115**

December 23, 2008

Hon. Brian M. Cogan, USDJ
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201
    *VIA ECF*

Re: **Bielski et al. v. Royal Plumbing & Heating Corp. et al.**
<u>**Docket: 06 cv 6542 (BMC)(VVP)**</u>

Dear Judge Cogan,

    I represent Plaintiffs in the above captioned matter. I am writing to request a status conference to discuss the following issues:

(1)    Requesting that Plaintiffs be permitted to amend the complaint to include a number of proposed plaintiffs and have their claims relate back to the filing of the complaint;

(2)    Requesting that Your Honor exercise jurisdiction over Plaintiffs' federal prevailing wage claims or dismiss them without prejudice and retain jurisdiction over Plaintiffs' unpaid wages and overtime claims under FLSA and New York Labor Law;

(3)    Requesting that Plaintiffs be permitted to recover costs and fees for the expenses resulting from Defendants' failure to engage in good faith settlement negotiations; and

(4)    Setting a pre-trial conference at the end of February 2009.

    **1.**    *Facts Underlying This Application*

    Plaintiffs brought this action for unpaid wages and unpaid overtime under the FLSA and New York Labor laws and common law, as well as prevailing wages under Federal law. Over the course of the past two years, numerous Plaintiffs joined, or have attempted to join, this action, and currently there are well over thirty seven (37) Named Plaintiffs in this action. There are also fourteen (14) proposed opt-ins, for whom Plaintiffs are requesting leave to amend the complaint to add them as Plaintiffs. Two of the Named Plaintiffs, John Fenner and Nicandor Perez, have

expressed interest in withdrawing from this action and were not included in any settlement negotiations. Pursuant to your decision in *Sobczak et al. v. AWL Industries, Inc. et al.*, 07 cv 1226 (BMC)(RER), which was based on *Grochowski v. Phoenix Const.* 318 F.3d 80 (2nd Cir., 2003), discovery in this case was limited to recovering FLSA and New York Labor Law overtime and unpaid wages calculated based on the regular rates and not for the prevailing wage rates.

On July 3, 2008, Plaintiffs submitted a letter requesting guidance regarding how to proceed with this case given the New York State Court of Appeal's ruling in *Cox v. NAP Const. Co., Inc.*, 2008 WL 2276160 (Ct. Apps., June 5, 2008), which permitted employees to bring third party beneficiary claims for federal prevailing wages under the National Housing Act. At a conference on July 16, 2008, Defendants suggested that the parties engage in settlement discussions, and requested that Your Honor suspend pre-trial date and give the parties a chance to resolve this action via negotiations. Pursuant to Your Honor's instructions, Magistrate Judge Viktor Pohorelsky was permitted to extend the discovery deadlines and the deadline for a pre-trial order indefinitely as long as the parties were engaging in good faith settlement negotiations. Subsequently, Plaintiffs and Defendants began to engage in settlement negotiations in earnest. In order to settle this case in its entirety, the parties agreed, for settlement purposes, to calculate damages based on the prevailing wages required under Federal law. Plaintiffs are alleging in this case that Defendants misclassified the trade they worked on federally funded projects and paid them at the lower rate than that they were entitled to.

The parties engaged in discussions, which, at the time, entailed calculating damages for over thirty (30) individuals. Plaintiffs had already retained the services of an expert, Glenn Pannenborg, CPA, who is experienced in doing these types of calculations and asked Mr. Pannenborg to prepare the calculations. Given the overwhelming amount of man hours worked by over thirty (30) Plaintiffs, Mr. Pannenborg made a number of reasonable assumptions when preparing the calculations. For example, as discovery in this action had proceeded on the basis of the unpaid wages and unpaid overtime claims, there was not enough information provided regarding what specific type of work Plaintiffs did in each pay period on which project, or documents that reflected the start of a project and the completion of the project. Consequently, Mr. Pannenborg was unable to calculate with certainty the prevailing wage rates each Plaintiff was supposed to be paid during each pay period and assumed that any Plaintiff who performed multiple duties during the course of a year performed those duties in equal amounts. Armed with these assumptions and the data available to him, Mr. Pannenborg calculated Plaintiffs' damages based on a "blended rate," which was the average of the various rates. Understanding that the "blended rates" were the most accurate rates Plaintiffs could come up with given the limited documentary material available to Plaintiffs, Defendants's counsel agreed to the use of blended rates. Plaintiffs first set of damages tables calculated damages of well over one million Dollars. The issue of Mr. Pannenborg's methodology was discussed at the first settlement conference with Judge Pohorelsky, and following his suggestions, Plaintiffs and Defendants agreed to look into retaining the services of a public engineer to perform forensic cost analysis to determine whether the hours of specific trade for each project as claimed by Defendants were correct, or whether Plaintiffs' claims would be supported by his findings.

In September, the parties met with a number of engineers, and to facilitate the engineers'

job, Plaintiffs served a subpoena on the New York City Housing Authority. However, Defendants decided that retaining an engineer was too costly and instead provided additional documents, including the start and completion date for each Plaintiff's work on the project and the beginning and end dates of all projects Plaintiffs worked on. I and my staff also met with multiple Plaintiffs to glean as much information as could be useful to fine tune the calculations. As Plaintiffs received Defendants' documents, Mr. Pannenborg and I reviewed the new documents and Mr. Pannenborg prepared a new set of damages tables.  Defendants' counsel and I had a telephone conference with Mr. Pannenborg, at which he explained to him how he fine-tuned the methodology in light of the additional documents.

From September until the early December, fourteen (14) new potential Plaintiffs came to my office and requested that they become part of this action. Accordingly, I obtained their information and, with Defendants' agreement, Mr. Pannenborg included their claims in the most recent set of damages tables, which calculates close to $3 million in damages. The entire gamut of negotiations lasted from the July 16, 2008 until present.

On December 19, 2008, a new attorney from Defendants' counsel's firm appeared alongside Mr. Bastible at the settlement conference. This new attorney was either blissfully unaware of the all the foregoing or was not concerned about the negotiations that occurred over the past four (4) months. This attorney expressed alleged outrage at the settlement amount requested by Plaintiffs, and questioned the entire methodology used in Plaintiffs' calculations, which Plaintiffs had spent months painstakingly refining to accommodate Defendants. Consequently, as it stands now, all of the time and effort spent developing a methodology was wasted, as Plaintiffs cannot use the calculations based on blended rates to prosecute their case in chief. I estimate that at least half of the time Mr. Pannenborg spent preparing damages tables, and half of the hours my firm spent preparing for settlement negotiations, was devoted to developing a now defunct methodology that is no use to Plaintiffs.

> 2. ***Plaintiffs Respectfully Request Leave to Amend the Complaint to Include Fourteen (14) Proposed Plaintiffs and to Allow Their Claims to Relate Back to the Last Date Potential Opt-ins Were Permitted to Join Under the Consent to Joinder***

Plaintiffs request leave to amend the complaint to add the following proposed Plaintiffs:

1. Mariusz Nawotczynski
2. Jan Bartosiewicz
3. Artur Skipiol
4. Manuel Cabrera
5. Joe Manuel Cabrera
6. Cesar Perez
7. Rafael Garcia
8. Dawin Brito
9. Juan Morillo
10. Tadeusz Wolosz

11. Donald Murray
12. Monson Gilmore
13. Daniel Matias
14. Rafael Guzman

In and around May 2007, Plaintiffs circulated a notice of pendency, which included a consent to joinder form. Pursuant to an agreement between the parties, the consents to joinder stated that the consent must be returned to Plaintiffs' office by August 1, 2007, so that Plaintiffs' counsel could timely file the consent. However, these proposed Plaintiffs never received notice of this lawsuit and only became aware of this lawsuit a few months ago. When they received notice of this lawsuit, they contacted my office and signed consents to joinder. They are all willing to sign affidavits stating that they never received the notice of pendency circulated in 2007 and never received any notice of this action until they found out about informally only a few months ago.

Plaintiffs notified Defendants of the existence of these proposed Plaintiffs soon after Plaintiffs became aware of their existence. They were included in the various damages tables prepared by Plaintiffs and served on Defendants for settlement and litigation purposes, and as such Defendants were well aware of their existence.

Pursuant to the below, Plaintiffs request that Your Honor permit Plaintiffs to amend the complaint to add these proposed Plaintiffs and to permit their claims to relate back to the last date proposed Plaintiffs were permitted to join this action, which was August 1, 2007.

### A. Leave to Amend a Complaint is Liberally Granted

Under Fed. R. Civ. P. 15 a party, with the court's permission, may amend its pleading and the Court should liberally permit amendments as justice requires. "The only reasons a court may deny a motion for leave to amend are undue delay, bad faith, prejudice to the opposing party or the futility of the amendment." ***Amaya v. Garden City Irrigation, Inc.***, 2008 WL 2940529 at *1 (E.D.N.Y., July 28, 2008) *citing* ***Andujar v. Rogowski***, 113 F.R.D. 151, 154 (S.D.N.Y., 1986)(internal quotations omitted).

At bar, none of the above factors applies. Plaintiffs discovered these proposed Plaintiffs only recently. Furthermore, Defendants have been defending this action for two years and would not be prejudiced if Plaintiffs were permitted to add these proposed Plaintiffs. Finally, a number of these opt-ins have claims within the FLSA's statute of limitations and those who do not can relate back their claims.

### B. Plaintiffs Should be Permitted to Relate Back These Proposed Plaintiffs' Federal Law Claims to August 1, 2007 and Their State Law Claims to the Filing of the Complaint

Since, at bar, Plaintiffs circulated a corrective notice of pendency, the proposed Plaintiffs' federal law claims should relate back to the last date potential Plaintiffs were allowed to join this

action, which is August 1, 2007. *See*, *Soler v. G & U, Inc.*, 103 F.R.D. 69, 75 (D.C.N.Y., 1984). Plaintiffs should also be permitted to relate back these proposed Plaintiffs' state law claims to the filing of the complaint. *Amaya*, 2008 WL 2940529 at *3. As a general rule, for an amendment to relate back, "the amendment must relate to the same conduct, transaction or occurrence described in the original complaint and [the] defendant must have had the requisite notice of the original action." *Amaya*, 2008 WL 2940529 at *2 *quoting* *Andujar*, 113 F.R.D. at 154. If the claims of the original Plaintiff and a liberal reading of the complaint apprise the Defendant of the existence of the additional Plaintiff and his claims, the amendment should relate back. *Sokolski v. Trans Union Corp.*, 178 F.R.D. 393, 398 (E.D.N.Y.,1998).

At bar, the nature of the original Plaintiffs' claims and the complaint apprised Defendants of the existence of these proposed Plaintiffs and their claims. First, the proposed Plaintiffs' claims arose out of the same conduct, transaction, or occurrence described in the original complaint. Moreover, Defendants had formal and informal notice of the proposed Plaintiffs' claims in two ways: first, the proposed Plaintiffs' claims are virtually identical to the Plaintiffs' claims. *Amaya*, 2008 WL 2940529 at *3 While the specific tasks performed by various proposed Plaintiffs and named Plaintiffs may differ, all Plaintiffs, proposed or named, were subject to Defendants' failure to pay proper wages for all hours worked. Second, the complaint was brought on behalf of the named Plaintiffs and others similarly situated. Defendants were on notice that others might join the action because of Defendants' policy to not pay proper wages. *Id.* Finally, there is no bad faith or undue delay at bar. These proposed Plaintiffs only became aware of this action recently, and Plaintiffs included them in the damages tables for settlement purposes. Accordingly, Defendants were on notice of these proposed Plaintiffs' claims as soon as Plaintiffs became aware of their existence. Consequently, the proposed Plaintiffs' federal law claims should relate back to August 1, 2007, the last day proposed Plaintiffs were permitted to join this action and their state law claims should relate back to the filing of the complaint.

> 2.  *Plaintiffs Request that Your Honor Exercise Jurisdiction Over Plaintiffs' Federal Prevailing Wage Claims or Dismiss Those Claims Without Prejudice and Retain Jurisdiction Over Plaintiffs' FLSA and New York Labor Law Claims*

As stated above, the parties agreed to base the settlement negotiations on the prevailing wage rates required by federal law. However, discovery in this case proceeded under the assumption that prevailing wage claims under federal law are not justiciable in federal court, and accordingly both parties only engaged in discovery on Plaintiffs' overtime and unpaid wages claims under the FLSA and New York Labor Law. The reason for the limited discovery is that when this case was filed in 2006, *Grochowski* was the undisputed authority in this circuit. However, on June 5, 2008, the New York State Court of Appeals ruled that workers have a third party beneficiary claim under the National Housing Act (*40, U.S.C., Sections 276a-276a-5*). *Cox v. NAP Const. Co., Inc.*, 2008 WL 2276160 (Ct. Apps., June 5, 2008). Although there is a tension between *Grochowski* and *Cox*, Plaintiffs contend that since Plaintiffs' claims for prevailing wages under the National Housing Act are third party beneficiary claims under state law, the New York State Court of Appeals has the last word on the content and interpretation of state law. *See*, *Bay Shore Union Free School Dist. v. T. ex rel R.*, 405 F.Supp.2d 230, 246

(E.D.N.Y., 2005). Accordingly, insofar as Plaintiffs' prevailing wage claims are under state law, this Court should follow ***Cox*** and not ***Grochowski***. Consequently. Plaintiffs respectfully request that Your Honor exercise jurisdiction over Plaintiffs' prevailing wage claims under the National Housing Act and permit Plaintiffs to engage in discovery on these claims.

In the alternative, if Your Honor does not wish to exercise jurisdiction over Plaintiffs' prevailing wage claims under federal law, Plaintiffs request that Your Honor dismiss those claims without prejudice so that Plaintiffs can refile them in state court and still retain the original filing date. Under New York CPLR § 205(a), when a case is dismissed without prejudice for any reason other than voluntary discontinuance, failure to prosecute, or lack of personal jurisdiction, a plaintiff can refile the case in a New York court for up to six months and still preserve the statute of limitations. ***See***, ***Houston v. Fidelity (Nat. Fin. Services)***, 1997 WL 97838 at *11 (S.D.N.Y., March 06, 1997), ***Murray v. Visiting Nurse Services of N.Y.***, 528 F.Supp.2d 257, 281 (S.D.N.Y., 2007). Plaintiffs respectfully request that if Your Honor decides to dismiss Plaintiffs' prevailing wage claims without prejudice, that he delay dismissing the claims until he rules on Plaintiffs' motion to amend the complaint and relate back the proposed Plaintiffs' claims.

District Judge Douglas E. Eaton provided plaintiffs with similar relief in ***Henryk Zebzda et al v. Tenavision, Inc. et al.***, Docket No.: 06-13123 (WHP) (DFE), Doc. 30 (filed on March 31, 2008) (copy attached). Like in the present action, Plaintiffs brought a number of claims in federal court, including a claim as third party beneficiaries pursuant to the contract between their employers and the New York City Housing Authority, and claims under the FLSA. Due to ***Grochowski***, Judge Eaton was unwilling to allow plaintiffs to bring the third party beneficiary claim for prevailing wages under the Davis-Bacon Act, but dismissed the entire action without prejudice, including the FLSA claims over which the Court did have subject matter jurisdiction. Plaintiffs were then able to bring the action in state court and take advantage of CPLR § 205(a). While, at bar, Plaintiffs are not requesting that Your Honor dismiss all of Plaintiffs' claims, since both parties have engaged in substantial discovery on the overtime and unpaid wages claims under the FLSA and New York Labor Law, Plaintiffs request that Your Honor dismiss Plaintiffs' prevailing wage claims without prejudice. The parties have not engaged in discovery on these claims, and therefore there would no waste of judicial resources if Plaintiffs filed their prevailing wage claims under federal law in state court. Accordingly, if Your Honor does not wish to exercise jurisdiction over these claims, Plaintiffs request that he dismiss these claims without prejudice so Plaintiffs can bring these claims in state court.

### 3. *Plaintiffs request that Your Honor Award Plaintiffs Costs and Attorneys' Fees For the Work Performed During the Settlement Negotiations*

As stated earlier, Plaintiffs' counsel expended numerous hours and substantial costs in engaging in settlement negotiations. Plaintiffs asked an expert to prepare calculations, who spent a large number of hours modifying Plaintiffs' damages calculations to make them more exact. Plaintiffs' counsel, and his staff, expended numerous hours conferring with clients, reviewing Defendants' documents, meeting with experts, engaging in discussions with Defendants' counsel, and drafting subpoenas. All these activities were undertaken on the assumption that Defendants

acceded to Plaintiffs' use of blended rates, which Defendants agreed to in July. I would estimate that about half of my firm's costs and hours expended since the parties began settlement negotiations were undertaken on the basis that the parties had an agreement on methodology and, due to Defendants' inexplicable "change of heart," were wasted. About $10,000 of the $20,000 spent on Mr. Pannenborg were spent procuring damages calculations that cannot be used in litigation and are therefore useless. Accordingly, Plaintiffs should be permitted to recover the costs and attorneys' fees for the costs and hours expended on negotiations.

### 4. *Plaintiffs Respectfully Request that Your Honor Schedule a Pre-Trial Conference By the End of February 2009*

Pursuant to the breakdown in settlement negotiations, this Court will likely set a pre-trial conference in the near future. Plaintiffs respectfully request that Your Honor schedule the conference around February 15, 2009. The reasons for asking for such a long delay are that my circumstances do not permit me to appear for any conference prior to February and because Mr. Pannenborg will now need to prepare a new expert report and Defendants will need to depose Mr. Pannenborg about that report.

I will not be available for an in-person conference before February 2009. Tomorrow, I am traveling to Poland to care for my ailing elderly mother, and will not return until the end of December. Subsequently, I am taking a much needed vacation until January 15, 2009. After I return from my vacation, I will need to finalize arrangements for moving my office and for executing the actual move, which must be completed by the end of January. Essentially, then, I will be out of the office from tomorrow until the beginning of February, and as a result I will be unable to appear for any in-person conferences prior to that time. Further, I also request that I be permitted until the middle of February to settle into my new office.

Moreover, as stated above, Mr. Pannenborg spent the past few months drafting an expert report that was based on a methodology designed solely for settlement and may be inadequate for litigation purposes. Mr. Pannenborg will now need to draft a new report for litigation purposes and Defendants will need time to depose him, if they so choose, on that report. Consequently, I request that Your Honor adjourn the pre-trial conference until the middle of February.

Although I will be unavailable for an in-person conference between now and February, I will be available for an telephone conference at any time. Accordingly, I request that Your Honor schedule a telephone conference at his convenience to discuss the issues detailed in this letter.

Thank you for your attention to the above.

Respectfully submitted,

_____/s/_____
Robert Wisniewski (RW-5308)